## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ALYSON HUTH, individually and on behalf of others similarly situated**, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 3:20-cv-1786 |
| **AMERICAN INSTITUTE FOR FOREIGN STUDY, INC. d/b/a AIFS STUDY ABROAD,** | ) ) ) ) | December 1, 2020 |
| *Defendant.* | ) | |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Alyson Huth, ("Plaintiff") by and through undersigned counsel, brings this action against American Institute For Foreign Study, Inc. d/b/a AIFS Study Abroad ("AIFS" or "Defendant") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this case as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 semester after canceling study abroad, in-person classes and changing all classes to an online/remote format as a result of the Novel Coronavirus Disease ("COVID-19").

2.      This decision deprived Plaintiff and the other members of the Class from recognizing the benefits of on-campus enrollment, access to facilities, cultural experiences, student activities, and other benefits and services in exchange for which they had already paid through its all-inclusive program fee.

3.     Defendant has either refused to provide reimbursement for the program and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Class for their loss.

4.     This action seeks refunds of the amount Plaintiff and other members of the Class are owed on a *pro-rata* basis, together with other damages as pled herein.

## PARTIES

5.     Defendant AIFS, Inc. provides cultural exchange and educational services by offering abroad college study, along with au pair placement, international camp staffing, travel, and insurance services.

6.     AIFS is a Delaware corporation with its principle place of business located at 1 High Ridge Park, Stamford, CT 06905.

7.     AIFS operates 10 global locations and has program offerings in 29 countries worldwide.

8.     AIFS affiliates with international universities to organize study abroad programs for American students, and works with over 500 American colleges and universities.

9.     Since 1964, Defendant has sold cultural exchange and educational opportunities to more than 1.6 million students.[1]

10.     Upon information and belief, Defendant has an annual revenue of $180 million.[2]

11.     Plaintiff is an individual and a resident and citizen of the state of Pennsylvania.

12.     During the Spring 2020 semester, Plaintiff was a full-time student at Duquesne

---

[1] https://www.aifs.com/pdf/Corporate_Brochure.pdf
[2] https://www.dnb.com/business-directory/company-profiles.american_institute_for_foreign_study_inc.7115c6bcd212972604644711a67ec573.html

2

University, located in Pittsburgh, Pennsylvania, who was enrolled in Defendant's study abroad program at Campus International De Cannes in Cannes, France.

13.    Plaintiff enrolled in AIFS because of the opportunity to live and study abroad in France and to interact in-person with another culture, faculty, and peers, and to experience all that France has to offer.

14.    Plaintiff lost the opportunity to interact with other cultures, faculty, or peers, and to even remain in France after AIFS cancelled the program it sold her.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

16.    This Court has personal jurisdiction over Defendant because Defendant conducts business in Connecticut and has sufficient minimum contacts with Connecticut.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b) because its principal place of business is in the state of Connecticut.

## BACKGROUND FACTS

18.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

19.    Plaintiff was registered as a full-time college student when she bought and enrolled in a study abroad program for the Spring 2020 academic semester from and through Defendant.

20.     As a precondition for enrollment, Plaintiff was required to and did pay an all-inclusive program fee for the study abroad program either by utilizing student loan financing, or

by paying out of pocket, as did all members of the putative Class.

21.     Studying abroad is defined simply as going to another country to learn. The dictionary definition of abroad states, "beyond the boundaries of one's country; in or to a foreign country.[3]

22.     There are hundreds of study abroad programs or independent study options across the country.

23.     Defendant's institution offers both in-person, hands-on study abroad programs, and fully online distance-learning programs, which it markets as separate and distinct products: [4, 5]

### The AIFS Value

### Why Study Abroad with AIFS?

AIFS is recognized as a leading provider of study abroad programs. Since 1964, over 1.5 million students have traveled abroad with AIFS. With more than 50 years of experience, we have the resources and experience to provide what our students want and need in a study abroad program, and to safeguard their welfare around the globe.

Unlike many other study abroad programs or independent study options, AIFS program fees are guaranteed in dollars. Our program fee is also all-inclusive, making it simple for you to live and study abroad and experience all that the world has to offer.

AIFS offers a wide range of unique programs in Asia, Australia, Europe, South Africa and the Americas. Most AIFS campuses offer courses in English or in foreign languages from beginner to advanced levels, so you don't even have to know a foreign language to study abroad.

### LOCAL LEARNING. GLOBAL THINKING.

Take the first step in your international experience! AIFS virtual study abroad programs give you the unique opportunity to experience international education and become a global citizen without leaving your home. Our virtual programs allow you to create your own international online curriculum, utilizing our global network of universities and faculty from all over the world. Picture yourself earning credit this semester during an international online experience that is all your own.

- Take one course up to a full semester*
- Study in multiple countries or at one University
- Take just courses, or combine with an International Internship through Global Experiences
- Access AIFS' Virtual Library of culture-themed videos including city spotlights, cooking lessons and career-focused workshops

Customize your course load with offerings from all over the world - all from the comfort of your home (or your favorite coffeeshop)! Among countless other options, you can:

- Learn Spanish from professors teaching in the heart of Madrid
- Immerse yourself in a Sustainable Development and Environmental Awareness course from Costa Rica
- Take a comparative look at International Business Ethics by taking a course from Chile, London or Hungary
- Intern with an internationally-based employer

*Students taking multiple courses with AIFS this Fall will receive a multi-course discount.

---

[3] https://www.merriam-webster.com/dictionary/abroad
[4] https://www.aifsabroad.com/value.asp
[5] https://web.archive.org/web/20200806094558/https://www.aifsabroad.com/online/

24.     Defendant has recognized the benefits and importance of studying abroad. "Study abroad allows students to engage in a life-changing experience that forever alters the way they view the world around them. In addition, studying abroad can help differentiate your child as they graduate and enter the workforce in the coming years."[6]

25.     Further, on AIFS' corporate brochure, Chairman and CEO William L. Gertz wrote the following[7]:

## A global perspective...

The need for enhanced global understanding is now greater than ever. AIFS is proud to provide the opportunity to meet this need, through the programs described in these pages. With our vast experience, global partnerships and financial security, we have been able to provide a wide variety of high-quality programs with top-notch services and unique cultural experiences to young people and families for more than a half century.

Our programs teach young people from around the world to appreciate the qualities and values of individuals from all nations. AIFS program participants learn vital language skills as well as how to thrive in a culture different from their own. We provide the educational edge needed to succeed in a highly competitive, diverse and interdependent world.

We proudly look back on 56 years of service to individuals and institutions involved with educational and cultural exchange. We look forward to the future and to a world that shares a common global vision of peace and prosperity.



William L. Gertz,
Chairman & CEO

26.     Accordingly, when students pay the all-inclusive program fee in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has

---

[6] https://www.aifsabroad.com/parents/
[7] https://www.aifs.com/pdf/Corporate_Brochure.pdf

promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

- Tuition for up to 18 semester credits;

- Face-to-face interaction with professors, mentors, and peers;

- Various meals Monday through Friday;

- Social and cultural activities, excursions and field trips;

- Overcoming challenges of living in another country;

- Extra-curricular activities, groups, intramural sports, etc.;

- Emphases on being physically present in historical locations;

- Student art, cultures, and other social activities;

- Exposure to community members of diverse backgrounds, cultures, and schools of thought;

- Attendance at the Cannes Film Festival;

- Social development and independence;

- Hands-on learning and experimentation; and

- Networking, volunteer and mentorship opportunities.

27.     Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

28.     When this happened, Plaintiff was forced to leave France, depriving her of the benefit of the bargain for which she had paid, and in exchange for which Defendant had accepted, i.e., the all-inclusive program fee as set forth more fully above.

29.     In addition to tuition, Defendant's website states that the all-inclusive program fee includes the following:

**Pre-Departure[8]:**

- **Personalized assistance** from site specialists on the AIFS Admissions Team in the U.S. to help you prepare for your study abroad experience, answer questions about the academic program, provide course syllabi and assist with the student visa process.
- **Pre-departure resources** including online course descriptions, an information handbook and an online AIFS account to help you manage your application and pre-departure materials.
- **Student networking resources** allow you to connect with other students who will be going on your program, as well as AIFS alumni who can provide first-hand information and advice on what to expect.

**On-Site[9]:**

- **Tuition** up to 18 semester credits depending on program selection.
- **Housing** in Campus Residence or a French homestay.
- **Meals** include breakfast and lunch Monday through Friday. Residence students also receive brunch on weekends.
- **Resident Director** and student services support staff to help with any questions or advice you may need while in France.
- **Cannes Film Festival (Spring Extended Semester only)** the world famous film festival runs for 2 weeks in May. Students receive a Cannes cinéphile pass which entitles them to see all the films presented at the Festival in different movie theaters throughout the city. AIFS students may have the opportunity to work as volunteers during the Film Festival.
- **Excursions and day trips** including 4-day excursion to Paris and 2-day excursion to Provence. Day trips to Monaco, St. Tropez, and excursions to Antibes and Île Sainte- Marguerite.
- **Cultural and social activities** which include visit to a Cistercian monastery, pottery workshop, wine and cheese tasting, theater tickets to the opera or ballet and the art museums of the Riviera.
- **Orientation workshops** to help you get to know your classmates better, familiarize you with the local area, advise you about living in Cannes and to help you adjust to French culture.
- **Volunteer work opportunities**
- **Language Exchange Club** with local French people.
- **AIFS Office** provides study areas and resources.
- **Campus services** – students have access to a café as well as a small recreational room and a volleyball court.

---

[8] https://www.aifsabroad.com/france/cannes/year2021/fees.asp
[9] Id.

- **Comprehensive insurance and assistance package**
- **24-hour emergency telephone service** allows you to reach AIFS staff at any time in an urgent situation.

**Upon Return[10]:**

- **Official transcript** issued by Chapman University which is accredited by the Western States Association of Colleges and Secondary Schools. Students will also receive a transcript in French from the Campus International de Cannes. One official copy of the transcript will be sent to the student's home institution on completion of the program.
- **Re-entry materials** and support upon return to the U.S. to help you make the transition back to life after your study abroad experience.
- **Alumni network and career development opportunities** on the AIFS Alumni Advocate and AIFS Alumni Ambassador Programs.

30.     As a result of being forced to leave France and return home for the latter portion of the Spring 2020 semester, Plaintiff and members of the Class lost the benefit of the services for which this all-inclusive fee had been paid.  For example, Plaintiff and the Class went without weeks of study abroad education, could not access any recreational facilities or cultural attractions, and could not participate in student activities and excursions.

31.     Plaintiff and members of the Class paid the all-inclusive program fee associated with their Spring 2020 enrollment so that they could benefit from on-campus academic instruction, abroad social activities, excursions and day trips, cultural events, recreational facilities, and health and treatments services "on-campus" in France.

32.     Defendant has not provided any refund of the all-inclusive program fee, with the exception of some portion of room and board refunds, and continues to retain the monies paid by Plaintiff and members of the Class.

## <u>FACTUAL ALLEGATIONS</u>

---

[10] <u>Id</u>.

33. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

34. Plaintiff departed from the United States for France on January 30, 2020.

35. Defendant's Spring term began with the first day of classes on or about February 4, 2020.

36. Defendant's Spring term was scheduled to conclude on May 29, 2020.

37. However, at Defendant's instruction, Plaintiff was forced to leave France and fly back to the United States on March 15, 2020.

38. Moreover, Plaintiff did not receive any further academic instruction at all until April 27, 2020, about six weeks later, when Defendant's online instruction began.

39. While on-campus in France, Plaintiff was in her French class for three hours every Monday through Friday. When Defendant moved to online instruction, Plaintiff was given two separate professors and rarely had class on Fridays, and never in-person or in France.

40. Further, while on-campus in France, Plaintiff had Art History class for four and a half hours every Wednesday. When Defendant moved to online instruction, Plaintiff was given instruction for two hours per week on Thursdays, and never in-person or in France.

41. Moreover, while on-campus in France, Plaintiff had her French Film class for four and a half hours every Thursday. When Defendant moved to online instruction, Plaintiff was given instruction for 10-20 minutes per week, and never in-person or in France.

42. Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students on March 15, 2020 deprived Plaintiff and other members of the Class from access to on-campus facilities, in-person instruction and the study abroad program for over 50% of the semester for which they had contracted.

43.     On Defendant's COVID-19: Student Academic Resources webpage, Defendant lists updates and information specific to various study abroad programs regarding transitions from on-campus to on-line education. Defendant stated the following regarding Plaintiff's study abroad program[11]:

### France - Cannes:

#### CAMPUS INTERNATIONAL DE CANNES

Key Information:

- They are working on a plan for students to complete both the French courses and elective courses online. A plan is not solidified at the moment.
- If they are unable to complete their courses, students will receive a college transcript with the number of hours they would have done, the level they would have reached in their French Class, and a grade.
- Students will receive updates from the university and professors through email.

44.     When classes eventually resumed on April 27, 2020, six weeks later, Plaintiff was given three new professors for her three classes, one of which was not through the Campus International De Cannes, but through the University of Grenoble.

45.     Further, Spring semester charges for the Cannes, France study abroad program are more expensive than in the Fall semester because AIFS provides its Spring students with the experience of attending the Cannes Film Festival, which Plaintiff and other members of the Class were unable to attend, despite having paid the higher rate.[12]

46.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students on March 15, 2020 deprived Plaintiff and other members of the Class from access to on-campus facilities and in-person instruction for over 50% of the semester for which they had contracted.

47.     In an April 17, 2020 blog post on Defendant's website, Defendant stated, "The

---

[11] https://www.aifsabroad.com/COVID-19-student-academic-resources.asp
[12] https://www.aifsabroad.com/france/cannes/year2021/
https://www.aifsabroad.com/france/cannes/year2021/fees.asp

readjustment period for any study abroad student can be challenging, and this is especially true for this semester's participants. We imagine you and your student are feeling a wide range of emotions both at their early return and the uncertainty of the global pandemic we are all navigating. The entire AIFS community is working hard to continue supporting students through this difficult time. We invite you to download and review *"Navigating Uncertainty: Resources for Thoughtfully Processing Your Time Abroad and Your Return,"* a guide we created to help students unpack the full experience they've had and provide them with some resources as they continue their return.[13]"

48.     Unfortunately, regarding supporting its students, nothing could have been further from the truth.

49.     Although Defendant eventually offered some level of academic instruction via online classes, Plaintiff and members of the proposed Class were deprived of the benefits of on-campus study abroad enrollment for which they paid as set forth more fully above.

50.     These realities notwithstanding, Defendant has refused and continues to refuse to offer appropriate refunds with respect to the all-inclusive program fee that had already been pre-paid.

51.     Likewise, Plaintiff and members of the proposed Class were deprived of utilizing services for which they have already paid, such as access to study abroad facilities, cultural experiences, student activities, health services and other opportunities.

52.     Plaintiff had no meaningful opportunity to interact with other cultures, faculty, or peers after AIFS cancelled her program and sent her home. Completing some coursework via online instruction for a few hours per week is a far cry from the immersive international experience of living and learning abroad.

---

[13] https://blog.aifsabroad.com/2020/04/17/supporting-your-student-through-their-covid-19-study-abroad-returnee-experience/

53.     Defendant has announced that it issued full *pro-rata* refunds for room and board fees. Accordingly, this action does not seek to certify a Housing Class for the recovery of those funds.  However, Plaintiff reserves the right to amend these allegations should discovery reveal Defendant failed or refused to issue these refunds as promised.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

55.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

**The Program Fee Class:**

> All people who paid the all-inclusive program fee for or on behalf of the students enrolled in Defendant's study abroad programs for the Spring 2020 but were denied live, in-person instruction abroad and forced to use online distance learning platforms for the latter portion of that semester.

56.     Excluded from the Class are the AIFS Board of Trustees, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

57.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

58.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

## Numerosity: Fed. R. Civ. P. 23(a)(1)

59.     The members of the Class are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiff is informed and believes that there are thousands of members of the Class. Although the precise number of Class members is unknown to Plaintiff, AIFS advertises having approximately 43,000 students participants each year.[14] AIFS also provides study abroad programs in 20 countries throughout Asia, Australia, Europe, South America, Central America and Africa.[15] Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)

60.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

i.   Whether Defendant engaged in the conduct alleged herein;

ii.  Whether Defendant has a policy or procedure of denying refunds, in whole or in part, to Plaintiff and members of the Class;

iii. Whether Defendant breached its contracts with Plaintiff and the other members of the Class by retaining the full all-inclusive study abroad program fee without providing the full all-inclusive study abroad program that fee was paid for;

iv.  Whether Defendant was unjustly enriched by retaining the full all-inclusive study abroad program fee without providing the full all-inclusive study abroad program that fee was paid for;

v.   Whether Defendant breached its contracts with Plaintiff and the other members of the Class by retaining the all-inclusive program fee without providing the

---

[14] https://www.aifs.com/pdf/Corporate_Brochure.pdf
[15] https://www.aifsabroad.com

services and benefits the fees were contracted to cover;

vi.   Whether Defendant violated Conn. Gen. Stat. Ann. § 42-110b as to Plaintiff and other members of the Class;

vii. Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

viii. Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

ix. The amount and nature of relief to be awarded to Plaintiff and the other members of the Class.

### Typicality: Fed. R. Civ. P. 23(a)(3)

61.     Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

62.     Plaintiff is an adequate representative for the Class because her interests do not conflict with the interests of other members of the Class she seeks to represent.  Plaintiff has retained counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

63.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff

and other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

64.    Even if members of the Class could afford individual litigation, the Court system likely could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

65.    To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

### Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

66.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT

### (Plaintiff and Other Members of the Class)

67.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

68.    Plaintiff brings this count on behalf of herself and other members of the Class.

69.    Plaintiff and the other members of the Class entered into contracts with Defendant

15

which provided that Plaintiff and other members of the Class would pay an all-inclusive program fee for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to their international programs; granting them the full rights and privileges of student status, including but not limited to access to campus facilities, cultural experiences, foreign studies, student activities, health services and live, in-person instruction in a physical classroom abroad.

70. The terms of this contract are as implied or set forth by Defendant through its website, marketing materials and other circulars, brochures, bulletins, publications, and course of conduct.

71. These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of an all-inclusive program fee.

72. One such right is the ability to be physically present in a foreign country, and fully enjoy the facilities, services, and cultural opportunities provided thereon.

73.     This is so axiomatic and engrained into the culture of study abroad education generally and AIFS specifically that it is enshrined within Defendant's vision, values, mission statement, and goals, which read[16]:

## Our Vision:

We bring the world together®

## Our Mission:

To provide the highest quality educational and cultural exchange programs to enrich the lives of young people throughout the world.

## Our Values:

- Excellence in our programs, operations and our people
- Respect for all cultures and ethnicities
- Exceptional, caring support for our program participants to ensure their safety and well-being
- Technological innovation
- Responsible financial stewardship
- Teamwork and collaboration both within the organization and with our global partners

- Encouragement of employee initiative and professional development
- Honest, equitable and non-discriminatory treatment of our employees and our program participants with an emphasis on diversity and inclusion
- Commitment to socially and environmentally responsible practices

**Goals:**

AIFS Programs:

- Promote students' curiosity and intellectual growth through high-quality academic programming which utilizes the host county & culture as context.
- Promote cross-cultural learning and increased understanding through both academic and extra-curricular events and activities focused on the interaction with the host culture.
- Facilitate students' self-awareness of their own culture by providing opportunity to compare and contrast cultural differences.
- Enhance students' personal growth, including qualities such as independence, confidence, self-reliance, curiosity and willingness to be in new and different surroundings and environments.
- Contribute to students' career and professional development by exposure to different fields of study and work, encouraging the development of skills sought by employers, and helping them to identify and articulate the applicable knowledge and skills acquired by studying abroad.
- Increase opportunity and access to study abroad programs for students from diverse backgrounds.

74.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply

---

[16] https://www.aifs.com/pdf/Corporate_Brochure.pdf

for enrollment at AIFS as opposed to other study abroad programs.

75.     Through these publications, Defendant markets and induces students into separate and distinct products. Defendant specifically markets certain study abroad programs as being offered on a fully online basis, as if it were remotely possible to receive the study abroad experience from the comfort of your own home or a local coffee shop, like Defendant suggests.[17]

76.     In any instance, Defendant dedicates an entire section of its website to these programs, which can be accessed at https://www.aifsabroad.com/online/.

77.     Conversely, Defendant's publications with respect to non-online classes are full of references to the study abroad experience, including numerous references to social and cultural activities; in-person classes, campus amenities; historical attractions, campus location, and the like.

78.     On Defendant's "Why Study Abroad with AIFS" webpage, Defendant discusses the value of studying abroad with AIFS. Particularly, Defendant states that there are "AIFS-organized social/cultural activities and field trips to help you learn more about your location and complement your academic studies."[18]

79.     Moreover, on the same webpage, visitors and students can watch a short persuasive video on, "Why You Should Study at AIFS," where current and former students discuss the study abroad experience and going to a new country for the first time.[19]

80.     Plaintiff and members of the Class fulfilled their end of the bargain and fulfilled their contractual obligations when they paid the all-inclusive fee for Spring 2020 study abroad programs.

81.     AIFS breached its contract with Plaintiff and members of the Class when it failed

---

[17] https://www.aifsabroad.com/online/;
https://web.archive.org/web/20200806094558/https://www.aifsabroad.com/online/
[18] https://www.aifsabroad.com/value.asp
[19] Id.; *See also* https://www.youtube.com/watch?time_continue=103&v=9Tnm8yQtJ98&feature=emb_title

to provide contracted-for in-person Spring 2020 study abroad programs, along with other services.

82.    AIFS has failed to provide adequate refunds for any portion of the programs covered by the all-inclusive fee, with the exception of prorated room and board, that were cancelled and subsequently moved online.

83.    Plaintiff and the members of the Class have been damaged as a direct and proximate result of Defendant's breach.

84.    Plaintiff and members of the Class are entitled to damages from Defendant, including but not limited to a *pro rata* portion of the all-inclusive program fee.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT

### <u>(Plaintiff and Other Members of the Class)</u>

85.    Plaintiff brings this count on behalf of herself and other members of the Class.

86.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

87.    Plaintiff and other members of the Class paid substantial amounts for live, in-person instruction in physical classrooms on a physical campus abroad with all the attendant benefits.

88.    Plaintiff and other members of the Class conferred a benefit on Defendant when they paid this all-inclusive program fee.

89.    Defendant has realized this benefit by accepting such payment and knew of the non-gratuitous nature of the benefits conferred upon them by Plaintiff and members of the Class.

90.    Defendant accepted and retained the benefits conferred by Plaintiff and members of the Class with full knowledge and awareness of those benefits.

91.    Plaintiff and other members of the Class did not receive the full benefit of their

bargain.

92.     Instead, Plaintiff and other members of the Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom in a foreign country along with the experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the study abroad cultural experience, access, and services.

93.     Even though Defendant has failed to adequately provide the services for which the fees was collected, Defendant has retained this benefit, making Defendant's retention unjust under the circumstances.

94.     As a result of closing the program, forcing Plaintiff and members of the Class to fly home, and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, and otherwise.

95.     Equity and good conscience require that Defendant return a *pro rata* portion of the all-inclusive program fee to Plaintiff and other members of the Class.

96.     Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### VIOLATION OF CONNECTICUT'S UNFAIR TRADE PRACTICES ACT ("CUTPA")

### (Plaintiff and Other Members of the Class)

97.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

98.     Plaintiff brings this count on behalf of herself and other members of the Class.

99. Plaintiff and the class members are consumers who purchased Defendant's product and services and were subject to unfair methods of competition and unfair, deceptive acts business practices as alleged herein, actionable as a class action under Conn. Gen. Stat. Ann. § 42-110g

100. At all times relevant, Defendant had a duty not to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce under Conn. Gen. Stat. Ann. § 42-110b ("CUTPA").

101. CUTPA provides that a practice is unfair if a party "engage(s) in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

102. Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive, and fraudulent acts and practices in violation of CUTPA by engaging in the aforementioned activities and those described below.

103. At all times relevant, Defendant through its uniform marketing and recruitment materials, including its website, academic catalogs, student handbooks, circulars, bulletins, publications and other representations engaged in "consumer oriented" conducted directed at Plaintiff and other members of the Class whereby Defendant offered to sell certain educational products and services.

104. Specifically, Defendant offered to Plaintiff and members of the Class an in-person, on-campus, abroad program with related services, including an in-person, hands-on curriculum; on-campus activities, services and access to facilities; on-campus housing; and on-campus meals.

105. Plaintiff and other members of the Class are consumers who enrolled in the study abroad program, and paid substantial tuition and fees for said products, facilities and services prior to the Spring 2020 academic semester, including tuition and costs, fees, housing costs, and meal costs.

106.     As part of its marketing practices and recruitment efforts, Defendant made numerous statements, representations, and omissions to the public with respect to the value and nature of the in-person abroad education opportunity and on-campus abroad experience that students who enrolled in Defendant's program would receive.

107.     Such statements, representations, and omissions, which were uniform and identical in nature, were intended to induce Plaintiff and other students into enrolling in Defendant's program and pay the all-inclusive program fee.

108.     The statements, representations, and omissions made by Defendant are objectively false, misleading and deceptive to Plaintiff and other members of the Class as well as the public at large.

109.     Plaintiff and other members of the Class agreed to pay the value of the all-inclusive program fee to Defendant with the reasonable expectation that students who enrolled in Defendant's abroad programs would receive an in-person and on-campus abroad experience and related services for the Spring 2020 semester.

110.     However, Plaintiff and other members of the Class did not receive the value of the academic services, programs, and/or benefits for which the all-inclusive program fee was charged.

111.     As a result, Plaintiff and other members of the Class were proximately caused to pay an excessive and inflated all-inclusive program fee.

112.     The acts and omissions of Defendant constitutes deceptive business acts or practice and/or false advertising.

113.     As a result of Defendant's foregoing violations of CUTPA, Defendant has directly and proximately caused damage to Plaintiff and other members of the Class and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable

attorneys' fees, expenses, costs, and disbursements.

## PRAYER FOR RELIEF

114. WHEREFORE, Plaintiff and members of the Class request that the Court enter an order or judgment against Defendant including:

A. Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C. Declaring that Defendant has wrongfully kept monies paid regarding its all-inclusive program fee, which includes tuition;

D. Requiring that Defendant disgorge amounts wrongfully obtained regarding its all-inclusive program fee, which includes tuition;

E. Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid by Plaintiff and members of the Class;

F. Scheduling a trial by jury in this action;

G. Awarding Plaintiff and members of the Class reasonable attorney's fees, costs and expenses, as permitted by law;

H. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law; and

I. Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury

in this action of all issues so triable.

This 1st day of December, 2020

**TOPTANI LAW PLLC**
*/s/ Edward Toptani*
Edward Toptani
375 Pearl Street, Suite 1410
New York, NY 10038
(212) 699-8930
edward@toptanilaw.com

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin**
Roy T. Willey, IV**
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com

**MOREA SCHWARTZ BRADHAM
FRIEDMAN & BROWN, LLP**
John M. Bradham**
444 Madison Ave., 4th Floor
New York, New York 10022
(212) 695-8050
jbradham@msbllp.com

**ATTORNEYS FOR PLAINTIFF**

**Pro Hac Vice Admission Forthcoming*