**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ALYSON HUTH,<br>    Plaintiff, | : <br> : <br> : | CIVIL CASE NO.<br>3:20-CV-01786 (JCH) |
| v. | : <br> : | |
| AMERICAN INSTITUTE FOR FOREIGN<br>STUDY, INC.,<br>    Defendant. | : <br> : <br> : <br> : | March 21, 2022 |

**RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 20)**

**I.   INTRODUCTION**

Plaintiff Alyson Huth brings this action on behalf of herself and a putative class against defendant American Institute for Foreign Study, Inc. ("the American Institute"). She alleges three counts against the American Institute related to its decision to not issue a pro rata refund after it cancelled in-person, study abroad classes and transitioned to a remote, online format in March 2020 due to the COVID-19 pandemic. See generally Compl. (Doc. No. 1).

The American Institute has moved to dismiss her Complaint in its entirety. See Def.'s Mot. to Dismiss Pl.'s Compl. in its Entirety (Doc. No. 20); Def.'s Mem. of Law in Supp. of its Mot. to Dismiss Pl.'s Compl. in its Entirety ("Def.'s Mem.") (Doc. No. 21); Def.'s Reply in Further Supp. of its Mot. to Dismiss Pl.'s Compl. in its Entirety ("Def.'s Reply") (Doc. No. 32).[1]  Huth opposes this Motion.  See Pl.'s Mem. of Law in Opp'n [to] Def.'s Mot. to Dismiss Pl.'s Class Action Compl. ("Pl.'s Mem.") (Doc. No. 25).

---

[1] Defendant has also filed two notices of additional authority after the Motion to Dismiss was joined.  See Notice of Supplemental Authority in Supp. of Def.'s Mot. to Dismiss the Compl. in its Entirety (Doc. No. 36); Notice of Additional Supplemental Authority in Supp. of Def.'s Mot. to Dismiss the Compl. in its Entirety (Doc. No. 37).

1

For the reasons discussed below, the Motion to Dismiss is granted.

## II.    ALLEGED FACTS

In July 2019, plaintiff Huth enrolled in the American Institute's study abroad program at Campus International de Cannes in Cannes, France for the spring 2020 semester.  See Compl. at ¶ 12; Def.'s Ex. A, Agreement and Release at 2 (Doc. No. 21).  At the time, Huth was a full-time student at Duquesne University in Pittsburgh, Pennsylvania.  Compl. at ¶ 12.  Huth alleges that she chose the American Institute "because of the opportunity to live and study abroad in France and to interact in-person with another culture, faculty, and peers, and to experience all that France has to offer." Id. at ¶ 13.  As a precondition for enrolling, she "was required to and did pay an all-inclusive program fee for the study abroad program either by utilizing student loan financing, or by paying out of pocket."  Id. at ¶ 20.

On January 30, 2020, Huth left the United States for France.  Id. at ¶ 34.  Her semester began on or about February 4, 2020 and was originally scheduled to conclude on May 29, 2020.  Id. at ¶¶ 35-36.  Of course, that timeline coincided with the start of the COVID-19 pandemic.  Due to COVID-19, Huth, "at Defendant's instruction . . . was forced to leave France and fly back to the United States" on March 15, 2020.  Id. at ¶ 37.  For the next six weeks, she "did not receive any further academic instruction at all." Id. at ¶ 38.  However, on April 27, 2020, "Defendant's online instruction began."  Id.

The online classes Huth was provided with were quite different and, according to her, inferior to her brief experience in France.  "While on-campus in France, [she] was in her French class for three hours every Monday through Friday.  When Defendant moved to online instruction", however, "[she] was given separate professors and rarely had class on Fridays, and never in-person or in France."  Id. at ¶ 39.  A similar

2

phenomenon happened with her other two courses.  Id. at ¶¶ 40-41.  In addition, the online versions of these classes were offered through the University of Grenoble, not Campus International de Cannes.  Moreover, the broader day-to-day cultural experiences she alleges the American Institute promised her never materialized, for the obvious reason that she was in the United States, not France, and had to attend all of her courses online.  Id. at ¶¶ 42-43, 49.

Still, Huth was not offered a pro rata refund for the time she lost in her courses and for the loss of her opportunity to live in France, although the American Institute did refund room and board on a pro rata basis.  Id. at ¶ 53.  Based on this failure, Huth brings three counts against the American Institute on her own behalf and on behalf of a purported class.  In Count One, she alleges breach of contract.  Id. at ¶¶ 67-84.  Count Two alleges unjust enrichment, id. at ¶¶ 85-96, and Count Three a violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  Id. at ¶¶ 97-113.

III.    **STANDARD OF REVIEW**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the

court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

## IV.  ANALYSIS

The American Institute has moved to dismiss all three counts of Huth's Complaint.  Below, the court analyzes each claim in turn.  Before doing so, however, the court "not[es] that this case has company.  In response to the COVID-19 pandemic, colleges and universities across the country closed their doors in the middle of the Spring 2020 semester and migrated course instruction from in-person classrooms to virtual ones.  Many of these institutions, however, chose not to refund any portion of students' tuition or fees" and, "[u]nhappy with these decisions, students (and parents) around the country have filed dozens – perhaps hundreds – of lawsuits alleging breach of contract and unjust enrichment, among other claims." Michel v. Yale University, 547 F. Supp. 3d 179, 185 (D. Conn. 2021) (collecting cases).  To be sure, this case presents a somewhat different fact pattern in that it involves study abroad and a defendant that is not itself a university.  Still, at least some courts have encountered similar scenarios where, as is the case here, the educational experience canceled due to COVID-19 was study abroad and the provider was not a university.  See, e.g., Zhao v. CIEE Inc., 3 F.4th 1 (1st Cir. 2021).

### A.  Breach of Contract

Count One of Huth's Complaint sounds in breach of contract.  In Connecticut, "'[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages.'" Michel, 547 F. Supp. 3d at 188-89 (quoting Meyers v. Livingston et al., 311 Conn. 282, 291 (2014)).  "Whether [a] contract is styled express or implied involves no difference in

4

legal effect, but lies merely in the mode of manifesting assent." Janusauskas v. Fichman, 264 Conn. 796, 804 (2003) (internal quotations and citations omitted). "A true implied [in fact] contract can only exist [however] where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. Such a contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services." Id. at 804-05 (internal quotations and citations omitted).

In addition, "Connecticut law recognizes that [t]he basic legal relation between a student and a private university or college is contractual in nature." Metzner v. Quinnipiac Univ., 528 F. Supp. 3d 15, 31 (D. Conn. 2021) (internal quotations and citations omitted). "[T]he catalogues, bulletins, circulars, and regulations of the institution determine the contractual relationship between the student and the educational institution." Id. (internal quotations and citations omitted). Thus, "[b]ecause a student bases his or her decision to attend a college or university, in significant part, on the documents received concerning core matters, such as faculty, curriculum, requirements, costs, facilities and special programs, application of contract principles based on these documents and other express or implied promises" is often appropriate. Id. (internal quotations and citations omitted).

Here, plaintiff Huth signed an "Agreement and Release" prior to her participation in the American Institute's study abroad program. See Agreement and Release (Doc. No. 21). That Agreement states, in pertinent part, that she:

> Unconditionally release[s] the [American] Institute from any claims for damage, injury, loss, or expense of any nature resulting from events beyond

>   its control, including without limitation acts of God . . . sickness or quarantine, government restrictions or regulations.

Id. at ¶ 2.

The Agreement further provides that:

>   The [American] Institute shall not be deemed in default of this Agreement or, unless otherwise expressly provided therein, or any ancillary agreements, addendums or materials, for any delay or failure to fulfill any obligation hereunder or thereunder so long as and to the extent to which any delay or failure in the fulfillment of such obligation is prevented, frustrated, hindered or delayed as a consequence of any event beyond such either's reasonable control including but not limited to Acts of God, government actions (including those restricting travel), pandemics . . . or any other event similar to those enumerated above (a "Force Majeure Event").

Id. at ¶ 7.  Huth argues, however, that "[t]he contract between [her] and [the American Institute] cannot be reduced to [this] single writing, because there are multiple sources provided by Defendant that create an overall obligation to create a study abroad experience."  Pl.'s Mem. at 6.  In addition to the academic catalogues explicitly incorporated into the Agreement, these "multiple sources" include the "circulars, brochures, bulletins, publications" of the American Institute related to Huth's study abroad program, as well as its "course of conduct."  Agreement and Release at ¶ 1; Compl. at ¶ 70.  Huth argues that together, these materials created an implied contract obligating the American Institute to provide Huth with a "study abroad experience [that] consist[ed] of, at a minimum, in-person instruction and education held in another country, which . . . allows students to observe and appreciate aspects of another culture through immersion."  Pl.'s Mem. at 7.  Because the American Institute failed to provide this experience and did not provide her with a pro rata refund, Huth argues that it has materially breached the contract.  Id. at 9-10.

6

Even assuming arguendo that Huth is correct and the "multiple sources" she cites are incorporated into the contract, the explicit provisions in the signed Agreement releasing the American Institute from liability for failure to perform due to a force majeure event are not altered by these "multiple sources" and are dispositive.  "Where the language of [a] contract is clear and unambiguous, the contract should be given effect according to its terms."  Thurston Foods, Inc. v. Wausau Bus. Ins. Co., No. 3:15-CV-14, 2017 WL 4765646, at *2 (D. Conn. Oct. 20, 2017) (citing Breiter v. Breiter, 80 Conn. App. 332, 336 (2005)).  "A contract is" considered to be "unambiguous when its language is clear and conveys a definite and precise intent."  Id. (citing Cantonbury Heights Condo., Inc. v. Local Land Dev. LLC, 273 Conn. 724, 735 (2005)).  For example, where a university has expressly "reserved the right to change, relocate, and/or modify its course offerings", courts have held that the onset of the COVID-19 pandemic and transition to online course offerings does not constitute a breach of contract by the university.  See Romankow v. New York Univ., No. 20 Civ. 4616, 2021 WL 1565616, at *4 (S.D.N.Y. Apr. 21, 2021); see also Michel, 547 F. Supp. 3d at 189-90 (where the university's regulations "reserve[d] [its] right to temporarily suspend – at its 'discretion and judgment' – its operations in response to emergencies", its "decision to suspend in-person education in light of the COVID-19 pandemic represent[ed] an exercise of authority expressly reserved to the University . . . [which] cannot constitute a breach").

Here, the Agreement signed by Huth expressly contemplated not only a force majeure event, but an actual pandemic itself.  See Agreement and Release at ¶ 7.  The Agreement was also perfectly clear in providing that, in the event of "acts of God . . .

sickness or quarantine, government restrictions or regulations", Huth was "unconditionally releas[ing] the [American] Institute from any claims for damage, injury, loss, or expense" resulting from such events.  Id. at ¶ 2.  Simply put, under the clear and unambiguous terms of the Agreement, "[t]he [American] Institute shall not be deemed in default . . . for any . . . failure to fulfill any obligation" due to a force majeure event, such as the COVID-19 pandemic.  Id. at ¶ 7.  Where, as is the case here, "the ordinary meaning" of the language in a contract "leaves no room for ambiguity . . . [a] court will not torture words to import ambiguity" when none exists.  Thurston Foods, Inc., 2017 WL 4765646, at *2 (internal quotations and citations omitted).

Because of this clear and unambiguous language in the Agreement, Huth's argument that these provisions constitute mere "unenforceable disclaimer[s]" is meritless.  Pl.'s Mem. at 12.  First, she cites no case law in support of this particular argument, nor does she provide any reason grounded in law for this court to ignore the express provisions of a signed Agreement.  She contends instead that, simply put, the contract itself obligated the American Institute to provide her with a study abroad experience and that it "cannot hide behind its disclaimers and deny recovery to students due to its own breach."  Pl.'s Mem. at 11.  This argument, however, ignores that fact that the force majeure provisions are <u>themselves a part of the contract</u>.  In the event of an unforeseen pandemic, those provisions dictate the obligations – or lack thereof – of the parties.  Because of this, the American Institute "did not breach [its contract with Huth] when it migrated [her] . . . coursework online but did not issue refunds for undelivered services."  Zhao, 3 F. 4th at 8.

Accordingly, the Motion to Dismiss is granted as to Huth's Count One breach of contract claim.

B.      Unjust Enrichment

In the alternative to her breach of contract claim, Huth brings an unjust enrichment claim in Count Two "to the extent it is determined a contract [did] not exist or otherwise apply." Compl. at ¶ 86. In Connecticut, "'[a] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another.'" Michel, 547 F. Supp. 3d at 192 (quoting Town of New Hartford v. Conn. Res. Recovery Auth., 291 Conn. 433, 451 (2009)). "'Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.'" Id. (quoting Town of New Hartford, 291 Conn. at 451-52).

In addition, "[t]he lack of a remedy under a contract is a precondition to recovery based on unjust enrichment." Id. (internal quotations and citations omitted). Thus, in Connecticut, "[p]roof of a contract enforceable at law precludes the equitable remedy of unjust enrichment." Alliance Group Services, Inc. v. Grassi & Co., 406 F. Supp. 2d 157, 166 (D. Conn. 2005) (internal quotations and citations omitted). "Where . . . there is an enforceable express or implied in fact contract that regulates the relations of the part[ies] . . . or that part of their relations about which issues have arisen . . . the doctrine of unjust enrichment is not applicable [to that] case." Id. (internal quotations and citations omitted).

The American Institute argues that dismissal of this Count is warranted because there is an existing contract between the two parties. Def.'s Mem. at 12-13. Huth, in turn, does not address this argument at all, nor does she dispute the existence of a contract between the two parties. Pl.'s Mem. at 13-15. Instead, she argues that, if the American Institute is able to prove that it was unable to perform the contract due to impossibility, then as a matter of law her unjust enrichment claim may proceed. Id. at 13.

This argument, however, mistakenly seeks to apply the affirmative defense of impossibility in a contract action in the face of a force majeure clause in the contract. It further ignores the fact that defendant has made no such impossibility argument here. The "impossibility of performance is a common law doctrine; whereas, application of [a] Force Majeure Clause is governed by contract language." Beardslee v. Inflection Energy, LLC, 904 F. Supp. 2d 213, 221 n. 10 (N.D.N.Y. 2012) (internal quotations and citations omitted), aff'd 798 F.3d 90 (2d Cir. 2015). In other words, Connecticut courts assess force majeure provisions in contracts as they would any other terms in the contract. Where "the plain language of the force majeure clause is clear and unambiguous . . . the contract is to be given effect according to its terms." Stanley Works v. Halstead New England Corp., No. CV010506367S, 2001 WL 651208, at *5 (Conn. Super. Ct. May 18, 2001) (internal quotations and citations omitted). In contrast, the common law doctrine of impossibility "represents an exception to the accepted maxim of pacta sunt servanda", i.e., "agreements must be kept." Dills v. Town of Endfield, 210 Conn. 705, 717 (1989). "Since impossibility" is a common-law "device[ ] for shifting risk in accordance with the parties' presumed intentions", it has "no place

when the contract explicitly assigns a particular risk to one party or the other" through, for example, a force majeure clause. Id. at 720 (internal quotations and citations omitted).

Here, the American Institute has not argued impossibility; rather, it has simply "maintain[ed] that the clear text of the force majeure clause in the Contract holds [it] harmless for . . . nonfulfillment of its obligations under the Contract." Def.'s Reply at 6. As discussed above, supra Section IV.A, the court agrees. Further, Huth at no point has argued that there is no contract between the parties. To the contrary, she has vociferously argued the opposite. See Pl.'s Mem. at 4-13. Because she does not respond to defendant's argument that her unjust enrichment claim should be dismissed in light of that contract, and because she "concedes the existence of a contract governing the parties' relationship", her unjust enrichment claim is precluded under Connecticut law. Zhao v. CIEE, Inc., No. 2:20-CV-00240, 2020 WL 5171438, at *4 (Aug. 31, 2020), aff'd 3 F.4th 1.

The court therefore grants the Motion to Dismiss as to Huth's Count Two unjust enrichment claim.

C.     CUTPA

Huth brings her third and final claim under the CUTPA, alleging that the American Institute "engaged in unlawful, unfair, deceptive, and fraudulent acts and practices" by offering Huth and others similarly situated "an in-person, on-campus, [study] abroad program" and then not providing it. Compl. at ¶¶ 102, 104. Huth further alleges that the American Institute's "statements, representations, and omissions . . . [were] objectively false, misleading and deceptive to [her] and other members of the [putative] Class as well as the public at large." Id. at ¶ 108.

"CUTPA provides that '[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Michel, 547 F. Supp. 3d at 193 (quoting Conn. Gen. Stat. § 42-110b(a)). "In determining whether certain acts constitute a violation of [CUTPA]", Connecticut courts assess: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other business persons]." Glazer v. Dress Barn, Inc., 274 Conn. 33, 82 (2005) (internal quotations and citations omitted); see also Edwards v. CBD & Sons, No. 3:17-CV-00466, 2018 WL 2303017, at *6 (D. Conn. May 21, 2018) (same standard). In addition, "a simple breach of contract" claim, refashioned as an action under CUTPA, "is [generally] insufficient to establish a violation" of the statute." Caires v. JP Morgan Chase Bank, N.A., 880 F. Supp. 2d 288, 300 (D. Conn. 2012). This "particularly [true] where the count alleging [a] CUTPA [violation] simply incorporates by reference the breach of contract claim and does not set forth how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy." Boulevard Assocs. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1039 (2d Cir. 1995) (internal quotations and citations omitted).

Here, dismissal of Huth's CUTPA claim is appropriate both because it is a simple reformulation of her breach of contract claim and because she has failed to allege any specific instances of the American Institute making statements, representations, or

omissions that offended public policy or were immoral, unethical, unscrupulous, or deceptive. In Count Three, she specifically incorporates her breach of contract claim, Compl. at ¶ 97, and the factual allegations she makes in Count Three mirror that breach of contract claim. See, e.g., id. at ¶¶ 106, 109 (premising her CUTPA claim on her "reasonable expectation", based on the American Institute's "marketing practices and recruitment efforts . . . that students who enrolled in [its] abroad programs would receive an in-person and on-campus abroad experience and related services for the Spring 2020 semester"). Moreover, the American Institute's pre-COVID-19 statements about providing a study abroad experience are insufficient to give rise to a CUTPA claim. "[A] statement predictive of future conduct – here performance under a contract – [does not] somehow become[ ] a 'misrepresentation' for CUTPA purposes simply [because] the party making the representation [later] cannot deliver on the promise." Leshine Carton Co., Inc. v. Matik of North Am., No. CV054007646S, 2008 WL 5252908, at *24 (Conn. Super. Ct. Nov. 19, 2008). Huth has not alleged that the American Institute did not intend to fulfill its promises at the time they were made – to the contrary, she was studying abroad in France when the pandemic hit. Absent such allegations, and drawing all reasonable inferences in her favor, Huth has not pled facts sufficient to state a plausible claim that the American Institute's statements, representations, or omissions offended public policy or were immoral, unethical, or unscrupulous.

Accordingly, the Motion to Dismiss is granted as to Huth's Count Three CUTPA claim.

**V.   CONCLUSION**

For the reasons discussed above, the Motion to Dismiss is granted as to all three of Huth's claims, and her Complaint is dismissed in its entirety. The dismissal, however,

is without prejudice, and Huth is granted leave to file an amended Complaint if she is able to replead consistent with this Ruling.  The amended Complaint must be filed no later than fourteen (14) days from the date of this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 21st day of March 2022.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge